**Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**Harvey B. STEPHENS and Roxy Stephens, doing business as a Partnership under the name of APCO Marine, Defendants.**

No. 77–4055.

United States District Court, W. D. Arkansas, Texarkana Division.

July 23, 1980.

Thomas M. Tompkins, U.S. Dept. of Labor, Dallas, Tex., for plaintiff.

Garnet E. Norwood, DeQueen, Ark., for defendants.

## OPINION

ARNOLD, Circuit Judge, Sitting by Designation.

This is a Fair Labor Standards Act case. The case was set for trial to the Court on January 8, 1980. When the case was called for trial, counsel agreed to submit it on the Government's proposed pretrial stipulation of facts, which is in the record, as amended in open court, as Court's exhibit 1, certain other exhibits and oral stipulations, and an affidavit to be furnished later. The affidavit and post-trial briefs have now been filed, and the case is ready for decision.

■ As counsel for both sides agreed in open court, the principal issue is whether defendants qualify for the exemption for retail or service establishments set out in 29 U.S.C. § 213(a)(2). (It is stipulated that defendants' employees are engaged in commerce, so basic coverage under the Act is clear.) The burden is of course on defendants to show that they are within the exemption.[1]

Defendants Harvey and Roxy Stephens did business in DeQueen, Sevier County, Arkansas, under the name APCO Marine. Their primary activity was the operation of a filling station, selling gasoline and the like. They also sold bus tickets for Jefferson Bus Lines. Small towns in Arkansas do not commonly have a bus station as such. The buses stop at some local place of business, such as a service station and passengers come there to buy tickets and get on buses. APCO Marine was such an establishment. APCO also accepted C.O.D. packages for shipment on Jefferson Bus Lines and acted as a rental agent for U-Haul trailers. The defendants have only one place of business, and they do not sell any goods or services for resale.

The statute, 29 U.S.C. § 213(a)(2), imposes a number of requirements that must be satisfied if the exemption is to be successfully claimed:

(1) 50% of the establishment's annual dollar volume must be "made within the State in which the establishment is located."

(2) 75% of the annual dollar volume must be

---

1. Plaintiff argues that the Court may not reach the issue of exemption because defendants did not plead it in their answer. The position is hardly tenable. The availability of the exemption is listed as one of the legal issues in the pretrial stipulation prepared by Government counsel.

(a) "not for resale" and

(b) "recognized as retail sales or services in the particular industry."

(3) The establishment must not be "an enterprise described in section 203(s) of this title," 29 U.S.C. § 203(s). Paragraph (1) of that subsection defines enterprise, for present purposes, as a business "whose annual gross volume of sales made or business done is not less than $250,000 (exclusive of excise taxes at the retrial level which are separately stated)." 29 U.S.C. § 203(s)(1).

There is no doubt that requirements (1) and (2)(a) in this list are met. All of APCO's dollar volume has been made in Arkansas, and none of it has been for resale.

The pivotal issue arises in the application of requirements (2)(b) and (3) as listed above. In order to apply the first of these two requirements it is necessary to compute the Stephenses' "annual dollar volume of sale of goods or services" and then determine what percentage of it is "recognized as retail sales or services in the particular industry." An ordinary filling station is a retail business. 29 C.F.R. § 779.320. The parties agree, on the other hand, that the sale of bus tickets is not a retail activity for this purpose.

The greater the bus-ticket revenue, therefore, the lesser the percentage of volume that is retail. The case comes down to this: does bus-ticket revenue include the gross amount collected for ticket sales, or does it mean merely the commissions that inured to the Stephenses' benefit as ticket-selling agents. This Court holds that only the commissions should be included.[2] The only authority in this Circuit so holds.

Schmidt v. Randall, 160 F.Supp. 228 (D. Minn. 1958) (DEVITT, J.). Wirtz v. Jernigan, 405 F.2d 155 (5th Cir. 1968), is contra, but this Court finds Schmidt better reasoned, primarily because of the analogy to the Supreme Court's later holding in Falk v. Brennan, 414 U.S. 190, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973) (commissions received by a company renting and managing real estate included; gross rental collected not the proper measure). APCO did not merely collect money for tickets and remit the money, less commissions, to Jefferson as a debtor might do to a creditor. Jefferson's portion of ticket-sales revenue, and all of the C.O.D.-package revenue, were actually "held in trust for . . . Jefferson Bus Lines." Court's Exhibit 1, Paragraphs 5, 6, and 7.[3]

Computed in this fashion, APCO's revenues for 1976, 1977, and 1978 break down as follows:

|  | 1976 | 1977 | 1978[4] |
|---|---|---|---|
| retail revenues (primarily sales of gasoline) | 95% | 94% | 93% |
| commissions on bus tickets, freight charges, and the like | 5% | 6% | 7% |

APCO thus amply qualified for the 75% requirement in 1976, 1977, and 1978. The figures supplied for 1973,[5] 1974, and 1975 are not broken down as between gasoline sales and commissions, but there is no reason to suppose that the character of the business was not the same throughout the years 1973–78. Since the percentages are so overwhelming for the years 1976–78, it is fair to infer, and the Court finds, that the retail percentage for the years 1973–75 was in excess of 75%.[6] Exemption requirement (2)(b) as listed above is satisfied.

2. Commissions were due only on ticket sales. No commission at all was paid APCO on sums collected for C.O.D. charges.

3. The same was true of U-Haul rental collections. Ibid. Apparently plaintiff concedes that only the U-Haul commissions are includible. Perhaps he thinks U-Haul rental, unlike selling bus tickets, is "retail."

4. Defendants were in business only a short time in 1978. They went out of business in February of that year.

5. 1973 is apparently barred by limitations, anyway, and the complaint seeks no relief with respect to this year.

6. This case is more than three years old. It needs to be disposed of promptly. If the inference made is contrary to fact, plaintiff may easily so assert by post-trial motion under Fed. R.Civ.P. 59. As a matter of fact, retail sales of

It remains to discuss the requirement numbered (3)—that the business not be an enterprise with $250,000 or more "annual gross volume of sales made or business done . . . (exclusive of excise taxes at the retail level which are separately stated)." 29 U.S.C. § 203(s). This requirement is met for 1973, 1974, 1975, 1977, and 1978 *whether or not* all monies received for ticket sales and the like are counted. For the year 1976 the Stephenses' gross revenues were $264,-422.85, which after subtracting excise taxes of $12,225.64, would yield a figure of $252,-197.21, *if* all monies received on behalf of Jefferson and U-haul should be included. As we have seen, they should not be: [7] only commissions (in 1976, $6,122.49 from Jefferson and $3,179.54 from U-Haul) are includible, and this adjustment brings the figure down to $193,374.23.

Defendants have clearly established their right to the retail exemption, and judgment will be entered dismissing the complaint.

gasoline appear to be a higher percentage in 1973, 1974, and 1975, because excise taxes for those years are much higher, on the order of fourfold, than in the years 1976–78.

7. It was orally stipulated that in January of 1971 someone with the Department of Labor told defendants on the telephone that commissions, not total money taken in, were the proper measure under the statute. The Court does not rely on this representation, so it is unnecessary to determine its legal effect.